```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION
```

| | |
|---|---|
| SANGAR MAWLOUD MOHAMED, § <br> SAHAR SHUKRI HAMMASOFI, § <br> ARAZW YOUNUS QADER, § <br> ZIRAG YOUNUS QADER, and § <br> BAYDA YAHYA SHAMMA, § <br> § <br>     Plaintiffs, § <br> § <br> v.  § <br> § <br> ERINYS INTERNATIONAL LTD., § <br> ERINYS IRAQ LIMITED, § <br> ERINYS UK LTD., NOUR USA, LTD., § <br> and ANHAM LLC, § <br> § <br>     Defendants. § | CIVIL ACTION NO. H-09-3362 |

                    MEMORANDUM AND ORDER

     Pending are Erinys (UK) Limited's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(2) (Document Nos. 23 & 24) and Nour USA, Ltd.'s Application for Attorney's Fees and Expenses Pursuant to 28 U.S.C. § 1927. After carefully considering the filings and the applicable law, the Court concludes as follows.

                      I.  Background

     Plaintiffs Sangar Mawloud Mohamed, Sahar Shukri Hammasofi, Arazw Younus Qader, Zirag Younus Qader, Bayda Yahya Shamma (collectively, "Plaintiffs") are Iraqi citizens living in Erbil, Iraq.  On the morning of October 18, 2007, Plaintiffs Sangar

Mohamed, Zirag Qader, and Arazw Qader hailed a taxi to take them from Erbil to Sulaimaniya, Iraq.  The taxi driver planned to drive south to Kirkuk, and then east to Sulaimaniya.  Between 10:30am and 11:00am, the taxi passed the village of Kara Hanjir, just outside of Kirkuk.  As the taxi traveled up and around a sloping bend in the road, "Erinys consultants," who were in a vehicle up the road, suddenly opened fire on the taxi.[1]  According to Plaintiffs, "[t]he Erinys individuals gave no warning signals before they unloaded a hail of bullets toward the taxi."[2]  The driver immediately stopped the taxi.  When the shooting stopped, the "Erinys employees" drove off without checking for survivors.

The passengers suffered serious injuries.  A bullet tore off part of Sangar Mohamed's left ear, and he has shrapnel wounds in his face, scalp, neck, torso, and left arm.  Zirag Qader was struck in the face with a bullet, which dislodged and destroyed his right eye.  He also suffered wounds to his face from shrapnel.  Arazw Qader, Zirag Qader's sister, suffered shrapnel wounds to her face and scalp.  All three have suffered from psychological illness.

Sangar Mohamed, Zirag Qader, and Arazw Qader assert causes of action for negligence and various intentional torts against Defendants "ERINYS INTERNATIONAL Ltd., ERINYS UK Ltd., ERINYS IRAQ

---

[1] Document No. 20 ¶ 4.2 (First Am. Complaint).

[2] Id.

2

LTD, ('Defendants' and/or 'Erinys')."[3]  Plaintiff Sahar Shukri Hammasofi is the wife of Sangar Mohammed, and joins in this suit seeking damages for loss of consortium. Plaintiff Bayda Yahya Shamma is the wife of Zirag Qader, and she also seeks damages for loss of consortium.

Plaintiffs also named two other companies–-Nour USA, Ltd. and Anham LLC–-as defendants in their Original Complaint and First Amended Complaint. Plaintiffs served Nour USA, Ltd. ("Nour") but not Anham LLC ("Anham"). On March 31, 2010, Nour moved to dismiss Plaintiffs' Original Complaint, asserting that (1) Plaintiffs' factual allegations did not support any claim against Nour and (2) the Court lacks personal jurisdiction over Nour.[4] Plaintiffs did not respond to the motion; instead, Plaintiffs filed their First Amended Complaint, re-alleging the same deficient allegations against Nour. Nour then moved to dismiss Plaintiffs' First Amended Complaint and requested attorneys' fees under 28 U.S.C. § 1927. The Court set the pending motions for hearing on July 25, 2010.

---

[3] Id. at 1.

[4] Both of Nour's grounds for dismissal were meritorious. First, Plaintiffs' Original Complaint failed to state any facts as to why Nour was named as a defendant. Plaintiffs did not allege that Nour participated in the shooting in Kara Hanjir, Iraq. Instead, Plaintiffs merely stated that Nour was an "agent" of Erinys International, Erinys UK, and Erinys Iraq. Plaintiffs failed, however, to allege any facts showing the existence of an agency relationship. Second, Nour's uncontested evidence established that Nour was not subject to personal jurisdiction in this case.

The day before the hearing, Plaintiffs filed their Notice of Voluntary Dismissal as to Nour USA, Ltd. (Document No. 32).  At the hearing, the Court questioned Plaintiffs' counsel about his justifications for suing Nour and Anham, and counsel conceded that the suits were baseless.  The Court dismissed Nour and Anham and found that Plaintiffs' suit against Nour was frivolous and vexatious under section 1927 and that Nour is entitled to recover from Plaintiffs' counsel, who are responsible for filing and then perpetuating a baseless suit, the reasonable and necessary fees and expenses Nour incurred in obtaining dismissal.  At the July 25 hearing, the Court requested that Plaintiffs' and Nour's counsels reach agreement on the amount of attorneys' fees, expenses, and costs that were reasonable and necessary to obtain Nour's dismissal.  They have not agreed.  Nour now asserts that it is entitled to $37,072.21 in fees and expenses.

Also at the July 25 hearing, the Court granted Plaintiffs' request for leave to file a response to Defendant Erinys UK's Motion to Dismiss.  The motion to dismiss is now fully briefed.[5]

---

[5] On April 8, 2010, Erinys UK moved to dismiss Plaintiffs' Original Complaint for lack of personal jurisdiction. Document No. 13.  Plaintiffs filed their Response to Defendant Erinys UK Limited's Motion to Dismiss on April 28, 2010.  Document No. 21. That day, Plaintiffs also filed their First Amended Complaint. Document No. 20.  Erinys UK then timely filed its pending Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(2).  Plaintiffs failed timely to respond to that motion.  At the hearing on June 25, 2010, the Court granted Plaintiffs' Motion for Leave to File Response to Defendant Erinys UK Ltd.'s Motion to Dismiss.  Plaintiffs filed their response on

II.  Discussion

A.  Erinys UK's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(2)

Erinys UK asserts that the Court lacks subject matter jurisdiction and personal jurisdiction.  Because the Court finds that Erinys UK should be dismissed for lack of personal jurisdiction, it does not reach the arguments regarding subject matter jurisdiction.

1.  Legal Standard

Personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)).  A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See*

---

July 3, 2010, and Erinys UK filed its reply on July 9, 2010.

Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). For claims arising under federal law, courts may assert personal jurisdiction over defendants who lack sufficient contacts to satisfy the due process concerns of any particular state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(2) when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States law. *See* World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 720 (5th Cir. 1996).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. *See* Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petrol. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203-04 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. *See* Alpine View, 205 F.3d at 215.

2.   <u>Texas Long-Arm Statute</u>

Erinys UK asserts that it is not subject to the specific or general jurisdiction of Texas.  Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements.  <u>Electrosource,</u> 176 F.3d at 871.  Two types of personal jurisdiction are recognized: (1) specific and (2) general.  In their response to Erinys UK's motion to dismiss, Plaintiffs present no facts to support specific jurisdiction over the "Erinys" defendants.  Instead, Plaintiffs argue that general jurisdiction exists.

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic.  *See* <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 104 S. Ct. 1868, 1872-73 (1984).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"  <u>Johnston v. Multidata Sys. Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008) (quoting <u>Submersible Sys., Inc. v. Perforadora Cent., S.A.</u>, 249 F.3d 413, 419 (5th Cir. 2001)).  These contacts must result from the *defendant's* actions; a defendant may "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another

party or third person.'" Burger King v. Rudzewicz, 105 S. Ct. 2174, 2183 (1985). For general jurisdiction purposes, the court views all the defendant's contacts "over a reasonable number of years, up to the date the suit was filed." Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th Cir. 1999).

Erinys UK has proffered evidence that it has never had an office in Texas, never employed anyone in Texas, and has never done business with any entity based in Texas. Plaintiffs do not controvert Erinys UK's evidence; instead, Plaintiffs point to the Texas contacts of either Erinys International or Erinys Iraq and assert that they are entitled to discovery to determine whether all of these "Erinys" companies operate "as a single business entity." Plaintiffs do not limit their discovery request to the threshold jurisdictional issue, but rather request "full discovery" to "avoid redundancy and delay caused by any type of limitation."[6]

"Courts presume the *institutional independence* of related corporations when determining if one's contacts with a forum state can be the basis for a related corporation's contacts." Turan v. Universal Plan Invs. Ltd., 248 F.3d 1139, 2001 WL 85902, at *3 (5th Cir. Jan. 24, 2001) (unpublished op.) (citing Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999)) (emphasis in original). This presumption may be overcome by "*clear* evidence"

---

[6] Document No. 35 at 19.

that the companies are alter egos or that one is acting as the other's agent. Id. (emphasis in original).

This case is similar to Kelly v. Syria Shell Petrol. Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000). In Kelly, the plaintiffs were survivors of firefighters who were killed in Syria from an oil well explosion. Id. at 844-45. The plaintiffs joined as defendants two non-resident oil development companies--Royal Dutch and Shell Transport. Id. The plaintiffs argued that Royal Dutch and Shell Transport availed themselves of jurisdiction in Texas because they indirectly owned Shell Oil Company, which is headquartered in Texas. Id. at 856-58. In support of their motion to dismiss, Royal Dutch and Shell Transport proffered uncontroverted affidavits showing that they were holding companies that merely owned interests in Shell Oil Company. Id. at 857. Shell Oil Company had "its own capital and its own employee benefit programs; Shell Oil Company's board consists of 11 members, one being an officer of Royal Dutch and one a director of Shell Transport; and Shell Oil Company's officers are *not* officers of Royal Dutch or Shell Transport." Id. (emphasis in original).

The Fifth Circuit found that the plaintiffs failed to make a *prima facie* case that Royal Dutch and Shell Transport "so control the activities of" Shell Oil Company that Shell Oil Company's contacts with Texas may be attributed to Royal Dutch or Shell Transport. Id.

> [Plaintiffs] presented *no* evidence that: Royal Dutch and Shell Transport financed the operations of Shell Oil Company; Royal Dutch and Shell Transport caused the incorporation of Shell Oil Company; Shell Oil Company is grossly undercapitalized; Royal Dutch and Shell Transport paid the salaries and other expenses of Shell Oil Company; Shell Oil Company received all its business from Royal Dutch and Shell Transport; Royal Dutch and Shell Transport used Shell Oil Company's property as their own; daily operations of the corporations were not separate; or Shell Oil Company does *not* observe corporate formalities.

Id. (emphases in original).  The Fifth Circuit affirmed the district court's denial of plaintiffs' request for additional discovery to support their alter ego theory.

> The declarations of the Royal Dutch, Shell Transport, and Shell Oil Company corporate representatives negate the possibility that . . . Royal Dutch and Shell Transport are the alter egos of Shell Oil Company. *[Plaintiffs] offer no basis whatsoever to support an inference that those corporate representatives' deposition testimony would contradict their sworn declarations*.

Id. (emphasis added).

Plaintiffs here, like the plaintiffs in Kelly, failed to make a preliminary showing to justify further discovery.  *See* id. at 856-57.  The uncontroverted evidence establishes that Erinys UK and Erinys International are not alter egos and do not operate as a single business enterprise.  Erinys UK and Erinys International observe all corporate formalities; they do not share operations management; they maintain separate accounting systems; they operate at arms-length under the terms of their Transfer Pricing Agreement;

10

they have separate headquarters and offices, and Erinys International exerts no day-to-day control over the internal business operations and affairs of Erinys UK.[7]  Moreover, Plaintiffs have produced no evidence showing that Erinys Iraq and Erinys UK are so related as to operate as alter egos or as a single business enterprise.

Even after the Court gave Plaintiffs an additional opportunity to respond to Erinys UK's motion to dismiss, Plaintiffs still have not specified *what* evidence they believe discovery would produce and *how* that evidence would support personal jurisdiction.  Rather, Plaintiffs merely state that they should be able to "cross-examine" Erinys UK's corporate representative, Peter Roberts, to "explore the veracity" of his declaration in support of Erinys UK's motion to dismiss.[8]  Like the plaintiffs in Kelly, Plaintiffs have "offer[ed] no basis whatsoever to support an inference that [Peter Roberts's] deposition testimony would contradict [his] sworn declarations."  Kelly, 213 F.3d at 857.  Thus, Plaintiffs' request for additional discovery is denied.  *See* id.; *see also* Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946-47 (7th Cir. 2000) (holding that district court did not abuse its discretion in dismissing for lack of personal

---

[7] Document No. 48, ex. C (Roberts Second Supp. Decl.).

[8] Document No. 35 at 12.

11

jurisdiction without allowing additional jurisdictional discovery from foreign defendant because the plaintiff's evidence showed only that the parents were affiliated with the subsidiary, not that the parents exercised an "unusually high degree of control" over the subsidiary or that corporate formalities were not observed); EsNtion Records, Inc. v. JonesTM, Inc., No. 3:07-CV-2027, 2008 WL 2415977, at *6 (N.D. Tex. June 16, 2008) (refusing to allow jurisdictional discovery on the plaintiff's theory that defendant is subject to personal jurisdiction under the alter ego or single business enterprise theories because the plaintiff failed to make a "preliminary showing of jurisdiction" and failed to demonstrate what evidence it expected to discover).[9]  Plaintiffs have failed to meet their burden to establish personal jurisdiction over Erinys UK.

B.   Nour's Application for Attorneys' Fees and Expenses Pursuant to 28 U.S.C. § 1927

At the hearing on July 25, 2010, the Court ordered Plaintiffs' counsel to compensate Nour for its reasonable and necessary fees and expenses in obtaining dismissal of Plaintiffs' frivolous and vexatious claims.  Nour asserts that it has incurred $37,072.21 in

---

[9] Because Erinys UK lacks minimum contacts with Texas, it is unnecessary to determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. See Felch v. Transportes Lar-Mex SA De CV, 92 F.3d 320, 329 n.20 (5th Cir. 1996); Nabulsi v. Nahyan, No. H-06-2683, 2009 WL 1658017, at *22 (S.D. Tex. 2009) (Lake, J.).

fees and expenses, which represents $36,863.75 in attorneys' fees and $208.46 in expenses. Plaintiffs' counsel asserts that the attorneys' fees are excessive because (1) Nour's second motion to dismiss was unnecessary because Nour's first motion to dismiss was deemed unopposed, (2) the number of hours billed by Nour's counsel were unreasonable, and (3) the billable rates charged by Nour's Washington D.C. attorneys were unreasonable.

The "lodestar" method is used to calculate reasonable attorneys' fees. *See* Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999); *accord* Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 568-69 (5th Cir. 2006). The lodestar method first requires determining "the compensable hours from the attorneys' time records, including only hours reasonably spent." Shipes v. Trinity Indus., 987 F.2d 311, 319 (5th Cir. 1993). The court then "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." Id. These two figures are multiplied together to produce the lodestar amount. Id. The lodestar amount may then be adjusted upward or downward based on any of the twelve factors listed in Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974), that have not already been considered in calculating the lodestar amount. Shipes, 987 F.2d at 320.[10]

---

[10] The Johnson factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal

Plaintiffs' first argument, that Nour's second motion to dismiss was unnecessary, is disingenuous. Nour properly filed the Motion to Dismiss Plaintiffs' First Amended Complaint *because Plaintiffs reiterated their admittedly baseless claims against Nour* in their First Amended Complaint. Plaintiffs' counsel should never have filed the baseless claims, *see* FED. R. CIV. P. 11(b), and having wrongfully done so, they should immediately have dismissed them when served with Nour's motions to dismiss. Instead, Plaintiffs' counsel filed a First Amended Complaint, re-alleging verbatim the same frivolous allegations against Nour. Based on the conduct of Plaintiffs' counsel in prosecuting this case, it was reasonable and necessary for Nour to incur fees in the filing of its motions to dismiss and in preparing for the hearing on June 25, 2010.

The Court has made a careful review of the time records and the motions filed by Nour. Due to the jurisdictional issues involved and the potential amount in controversy, it is unsurprising that the task of crafting arguments, writing motions, and preparing for the June 25 hearing fell to partners and mid-level associates. Drawing upon the Court's familiarity with the

---

services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases. Johnson, 488 F.2d at 717-19.

14

issues in the case, the Court finds that it was reasonable and necessary for Nour's lawyers in their efforts to obtain dismissal of Plaintiffs' claims to require the services *equivalent* to one partner, one mid-level associate, and one junior associate, expending the following numbers of hours, to which are applied the following hourly rates that are within the customary range of rates charged by counsel for similar services in the Houston area, for a lodestar amount as follows:

| Attorney/ Legal Assistant | Hours Required | Hourly Rate | Totals |
|---|---|---|---|
| Partner | 20 | $500 | $10,000 |
| Mid-Level Associate | 20 | $325 | $6,500 |
| Junior Associate | 10 | $225 | $2,250 |
| TOTAL | 50 | | $18,750 |

Under the "lodestar" method, Nour is entitled to recover as reasonable and necessary attorneys' fees the sum of $18,750.00.

Neither party has elaborated on factors in Johnson, 488 F.2d 714 (5th Cir. 1974). Nonetheless, the Court has *sua sponte* consulted each of the Johnson factors, and finds that they are duplicative of the Court's lodestar calculation determined above. When setting the reasonable legal rates, the Court considered factors (2), (3), (5), (8), and (9), and when determining the reasonableness of the time billed the Court considered factors

(1) and (8). The Court finds no additional evidentiary basis requiring an adjustment of its findings. Accordingly, Nour is entitled to $18,750.00 in attorneys' fees and $208.46 in expenses in obtaining dismissal of Plaintiffs' frivolous and vexatious claims.

### III.  Order

Based on the foregoing, it is

ORDERED that Erinys (UK) Limited's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(2) (Document Nos. 23 & 24) is GRANTED, and Plaintiffs' claims against Erinys (UK) Limited are DISMISSED without prejudice for lack of jurisdiction. It is further

ORDERED and ADJUDGED that Defendant Nour USA, Ltd. shall have and recover from Plaintiffs' counsel Tobias Anthony Cole and Mark Hinkle Cole LLP, jointly and severally, reasonable and necessary attorneys' fees incurred in obtaining dismissal of Plaintiffs' frivolous and vexatious claims, in the amount of $18,750.00, and reasonable expenses in the amount of $208.46, for a total judgment of $18,958.46. Payment in full shall be made forthwith, and not later than fourteen (14) days after the date of this Order, to Nour

USA, Ltd., in care of its attorneys, Michael K. Bell, Bell, Ryniker & Letourneau, 5847 San Felipe, Suite 4600, Houston, Texas 77057.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 23rd day of August, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE